# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re AFI HOLDING, INC.,<br><br>    Debtor<br><br>---<br><br>KEITH MCKENZIE<br><br>    Appellant/Cross-Appellee,<br><br>    v.<br><br>CHRISTOPHER R. BARCLAY, Chapter 7 Trustee,<br><br>    Appellee/Cross-Appellant<br><br>---<br><br>AND RELATED APPEALS | Nos.  CV 05-3232 PA<br>      CV 05-4275 PA<br>      CV 05-7695 PA<br>      CV 07-3646 PA    *<br>      CV 07-3651 PA<br>      CV 07-3653 PA<br>      CV 07-4472 PA<br>      CV 07-4483 PA<br>      CV 07-4489 PA<br><br>ORDER REMANDING ACTIONS TO BANKRUPTCY COURT<br><br>Bankruptcy No.   LA 01-41567 VZ<br>Adversary No.    ADV 03-2479 VZ |

Before the Court are appeals and cross-appeals from judgments entered by the United States Bankruptcy Court for the Central District of California in adversary proceedings brought by Carolyn A. Dye, the former Chapter 7 trustee appointed to administer the bankruptcy estate of Advance Finance, Inc. and its related entities (collectively "AFI").[1/] The Bankruptcy Court entered the judgments after granting the Trustee's summary judgment

---

[1/]     While these proceedings were pending, Carolyn Dye was removed as the trustee and replaced by successor trustee Christopher R. Barclay. Both the former trustee and the successor trustee will be referred to as "Trustee."

motions seeking to avoid transfers AFI made to its investors prior to AFI's bankruptcy. The appellants, who were defendants in the adversary proceedings (the "Investors"), challenge the entry of judgment against them. The Trustee's cross-appeals challenge the Bankruptcy Court's denial of prejudgment interest.

The Court has already considered similar judgments entered by the Bankruptcy Court in adversary proceedings involving some of AFI's other investors. In those earlier appeals, after considering both In re United Energy Corp., 944 F.2d 589 (9th Cir. 1991) and In re Agric. Research & Tech. Group., Inc. (Agretech), 916 F.2d 528 (9th Cir. 1990), this Court reversed the Bankruptcy Court after concluding that the Investors "exchanged reasonably equivalent value when their rights to restitution were proportionately reduced by the . . . payments they received." In re United Energy Corp., 944 F.2d at 595. As a result, the Court reversed the Bankruptcy Court's judgments to the extent that AFI's payments to the Investors extinguished the Investors' rights to recover the principal they had invested. The Court affirmed the Bankruptcy Court's judgment with respect to any amounts paid to the Investors as "interest" above the amounts invested, declined to rule on the Bankruptcy Court's denial of prejudgment interest, and remanded to the Bankruptcy Court for consideration of the Investors' good faith defenses. The Investors in those earlier proceedings appealed this Court's rulings to the Ninth Circuit. On April 16, 2008, the Ninth Circuit affirmed this Court's rulings and remanded the action to this Court. In re AFI Holding, Inc. (Mackenzie), 525 F.3d 700 (9th Cir. 2008).

Following receipt of the Ninth Circuit's Mandate in Mackenzie, this Court issued an order to show cause why Mackenzie and all of the other related appeals pending in this Court should not be remanded to the Bankruptcy Court for further proceedings consistent with the Ninth Circuit's decision in Mackenzie.[2] In their response to the order to show

---

[2] In addition to Mackenzie, Case Nos. CV 05-3232 PA and CV 05-4275 PA, the Court currently has the following actions pending before it: CV 05-7695 PA (which is a consolidated appeal involving appeals originally filed as Case Nos. CV 05-7695 PA, CV 05-7709 PA, CV 05-7710 PA, CV 05-8229 PA, CV 05-8291 PA, CV 05-8346 PA, CV 05-8349

-2-

cause, the Investors argued that rather than remanding these actions, the Court should instead withdraw the references to the Bankruptcy Court and assume responsibility for the actions.[3/]  In a footnote, the Investors also stated that <u>Mackenzie</u> "left additional common issues . . . to another day" and argued that this Court should address those issues rather than remand all of the pending actions to the Bankruptcy Court.  The Court then ordered the parties to supplement their responses to the order to show cause to identify any issues that were raised in the pending appeals but not resolved by the Ninth Circuit.

        In their further response to the order to show cause, the Investors identified the following issues:  (1) whether the Bankruptcy Court committed reversible error by concluding that the trustee had standing to pursue these avoidance actions; (2) whether the Bankruptcy Court committed reversible error by precluding the Investors from asserting affirmative defenses of unclean hands, <u>in pari delicto</u>, offset, and recoupment; (3) whether the Bankruptcy Court committed reversible error in its evidentiary rulings; and (4) with respect to Adelaida San Diego, whether the Bankruptcy Court erroneously concluded that she was an initial transferee rather than a custodian.  Though the Investors apparently desire

---

PA, CV 05-8392 PA, CV 05-8436 PA, CV 05-8453 PA, CV 05-8562 PA, CV 05-8583 PA, CV 05-8593 PA, CV 05-8980 PA, CV 05-8986 PA, CV 05-8988 PA, CV 05-8989 PA, CV 06-0001 PA, CV 06-0042 PA, CV 06-0049 PA, CV 06-0131 PA, CV 06-0186 PA, CV 06-0258 PA, CV 06-0280 PA, CV 06-0295 PA, CV 06-0335 PA, CV 06-0466 PA, CV 06-0470 PA, CV 06-0475 PA, CV 06-0493 PA, CV 06-0494 PA, CV 06-0601 PA, CV 06-0602 PA, CV 06-0630 PA, CV 06-0637 PA, and CV 06-0666 PA), CV 07-3646 PA, CV 07-3651 PA, CV 07-3653 PA, CV 07-4472 PA, CV 07-4483 PA, and CV 07-4489 PA

[3/]    The Court has repeatedly denied the Investors' requests that this Court withdraw the references to the Bankruptcy Court as premature.  The Court continues to believe that withdrawal at this stage is inappropriate.  Moreover, by raising the issue in response to an order to show cause having nothing to do with withdrawal, the Investors have not properly put the matter before the Court by way of noticed motion as required by the Local Rules.  <u>See</u> Local Rule 6-1.

an additional opportunity to fine-tune their arguments on these issues, each of the issues has already been adequately briefed.[4/]

   A.   The Trustee's Standing to Pursue these Avoidance Actions

To avoid transfers pursuant to § 544(b), the Trustee must step into the shoes of an unsecured creditor who "'had a viable claim against [the] debtor at the time the bankruptcy petition was filed.'" In re Acequia, 34 F.3d 800, 807 (9th Cir. 1994) (quoting Karnes v. McDowell, 87 B.R. 554, 558 (Bankr. S.D. Ill. 1988)). Here, the Trustee asserted his right to avoid the transfer based on, among other claims, the existence of an unsecured claim filed by the Securities and Exchange Commission on behalf of the defrauded investors. The Investors claim that the Trustee lacks standing under § 544(b) because the SEC withdrew its claim against the AFI bankruptcy estate on February 26, 2004. Because the SEC possessed a valid unsecured claim when AFI's bankruptcy petition was filed on October 22, 2001, the Trustee has standing to avoid transfers under § 544(b). In re Acequia, 34 F.3d at 807. Moreover, even though a creditor may have only had a claim against one of the AFI entities, the order consolidating the AFI bankruptcies allows the Trustee to use the existence of a single creditor's claim to avoid fraudulent transfers made by any of the AFI entities. In re Bonham, 229 F.3d 750, 764 (9th Cir. 2000).

Additionally, as the Ninth Circuit held in Mackenzie, "[o]ne creditor of any amount will suffice for the purposes of § 544(b). In this case, at least one unsecured creditor existed, and Cal. Civ. Code §§ 3439.04(a) and 3439.08(a) provide California state law allowing an unsecured creditor to reach the transfers made by AFI to Mackenzie in 1996 and 1997." Mackenzie, 525 F.3d at 703 (citations omitted). The Ninth Circuit's conclusion that an

---

[4/] In addressing these issues, this Court reviews the Bankruptcy Court's legal rulings on a motion for summary judgment de novo, although findings of fact are reviewed for clear error. In re Kaypro, 218 F.3d 1070, 1073 (9th Cir. 2000). The Bankruptcy Court's evidentiary rulings are reviewed for an abuse of discretion. In re Smith's Home Furnishings, Inc., 265 F.3d 959, 963 (9th Cir. 2001). Awards of prejudgment interest are also reviewed for an abuse of discretion. Agretech, 916 F.2d at 533. Discretionary rulings should not be disturbed without a definite and firm conviction that the Bankruptcy Court committed a clear error of judgment. See In re Lowenschuss, 67 F.3d 1394, 1399 (9th Cir. 1995).

unsecured creditor existed and provided the Trustee with standing to avoid the transfers at issue is law of the case and binding on this Court and the Bankruptcy Court. See United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

The Investors additionally argue that the adversary proceedings have squandered the debtor's assets and should have been brought pursuant to California Corporations Code section 15666's provisions related to distributions made by insolvent partnerships rather than as fraudulent transfer avoidance actions. Neither of these arguments provides a defense to the Trustee's claims. Whether the Trustee has pursued the most economical and efficient litigation strategy has no bearing on the legal sufficiency of the claims involved in the appeals pending before this Court. Finally, the Investors have offered no authority in support of their argument that California Corporations Code section 15666 is the exclusive remedy in this situation. Avoidance actions are commonly commenced against investors of Ponzi schemes. See, e.g., Agretech, 916 F.2d 528; In re United Energy Corp., 944 F.2d 589; In re Slatkin, 310 B.R. 740 (C.D. Cal. 2004). To require application of partnership law rather than fraudulent conveyance principles in such situations could encourage the development of Ponzi schemes relying on the sale of partnership interests rather than other types of investment vehicles if those who invest in such schemes were not subject to avoidance actions. In the absence of controlling legal authority, the Court declines to adopt such a rule. See Scholes v. Lehmann, 56 F.3d 750, 755 (7th Cir. 1995) (allowing fraudulent conveyance law to avoid transfers made in Ponzi scheme which involved the sale of limited partnerships); see also Agretech, 916 F.2d at 540-41.

   B.  The Applicability of Affirmative Defenses Asserted by the Investors

The Investors contend that the Bankruptcy Court improperly rejected their affirmative defenses of in pari delicto, unclean hands, offset, recoupment, and equitable earmarking. With respect to the Investors' arguments concerning the original trustee's involvement with AFI prior to her appointment, the Bankruptcy Court's appointment of the successor trustee forecloses their unclean hands and in pari delicto defenses. FDIC v. O'Melveny & Myers, 61 F.3d 17, 18 (9th Cir. 1995) ("[D]efenses based on a party's unclean hands or inequitable

conduct do not generally apply against that party's receiver. While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law.").

The Investors' assertion of offset, recoupment, and equitable earmarking defenses all attempt to prevent the Trustee from avoiding the transfers to them on the ground that as defrauded investors, they possess offsetting claims against AFI for the amounts that the Trustee seeks to recover from them. While the Investors' concerns may be relevant to CUFTA's "reasonably equivalent value" inquiry, they do not provide independent affirmative defenses to the Trustee's avoidance actions. In re Acequia, 34 F.3d at 817 ("[A] fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim."); see also id. ("'The reason [for the 'no setoff' rule] is, to permit this to be done would defeat the right to recover the [conveyance] and render the statute futile. In such a case the transaction is single [as opposed to mutual], and results in a depletion of the fund that would otherwise have gone to the creditors. . . . [T]he right to offset is denied, because the estate has been depleted to the detriment of creditors of like class, and to allow the right of set off would perpetuate the depletion.'") (quoting Mack v. Newton, 737 F.2d 1343, 1366 (5th Cir. 1984)); In re United Energy Corp., 944 F.2d at 597 ("It is true that a fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim."). The Bankruptcy Court therefore properly rejected the Investors' affirmative defenses.

C.  The Propriety of the Bankruptcy Court's Evidentiary Rulings

The Investors also challenge several of the Bankruptcy Court's evidentiary rulings. The only evidentiary rulings the Investors specifically identify, however, are the Bankruptcy Court's decision overruling the Investors' objections to the expert report submitted by Ronald Durkin, the exclusion of the Farr Declaration and Michiels Report, and the admission of AFI's business records.[5] The Court concludes that the Bankruptcy Court did

---

[5]  To the extent the Investors challenge other unspecified evidentiary rulings, they have waived them by failing to adequately develop their arguments in their briefs or provide citations to the record. Kohler v. Inter-Tel Technologies, 244 F.3d 1167, 1182 (9th Cir.

not abuse its discretion when it ruled on the admissibility of the Durkin Report, Michiels Report, Farr Declaration, or AFI's business records.[6/]  See In re Smith's Home Furnishings, Inc., 265 F.3d at 963.  Moreover, as discussed above, Eisenberg's plea agreement and the Eisenberg Declaration, conclusively establish the existence of a Ponzi scheme and AFI's fraudulent intent.[7/]  As a result, even if the Bankruptcy Court's evidentiary rulings were in error, any such error was harmless.  Duran v. City of Maywood, 221 F.3d 1127, 1130 (9th Cir. 2000) ("'To order reversal on the basis of an erroneous evidentiary ruling, we must find not only that the district court abused its discretion but also that the error was prejudicial.'") (quoting Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999)).

>   D.   The Liability of an Investor who Received Transfers for the Purported Benefit of a Third-Party

San Diego argues that she is uniquely situated because she alone among the Investors received transfers from AFI as a custodian for a minor.  Without specifically addressing the issue, the Bankruptcy Court granted judgment in favor of the Trustee.  On appeal, San Diego contends that as a custodian, she never possessed "dominion and control" over the funds transferred to her by AFI because those funds were for the benefit of the minor.  While it is true that courts have refused to order transferees to return funds received by them on behalf of others when it would be inequitable to do so, see, e.g., In re Bullion Reserve, 922 F.2d 544, 548-49 (9th Cir. 1991) (declining to avoid transfer where "it would be 'inequitable' to

---

2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); see also Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n.1 (7th Cir. 1996).

[6/]   The Investors' objection to the admission of AFI's business records on "chain of custody" grounds is particularly weak given their responses to the Trustee's Request for Admissions in which the Investors admit the authenticity of many of the same documents.  See ER, pp. 1588-1707 & 1829-1848

[7/]   In Mckenzie, the Ninth Circuit rejected the Investors' argument that Eisenberg's guilty plea was insufficient to establish the existence of a Ponzi scheme.  See Mckenzie, 525 F.3d at 704 ("Eisenberg's plea demonstrates the existence of fraudulent intent and a Ponzi scheme, and Mackenzie failed to identify evidence in the record that created a genuine issue of material fact as to either issue.").

allow recovery against an entity merely because it had 'technically . . . received the funds . . . ,' if the entity had 'never actually controlled the funds.'") (quoting In re Chase & Sanborn Corp., 848 F.2d 1196, 1200 (11th Cir. 1988)), San Diego cites to no case in which the "dominion and control" test was applied to shield a custodian from a Trustee's avoidance action.

Here, the only evidence that San Diego was a custodian comes from her own declaration. Nothing in the investor agreement between her and AFI or in the payments from AFI to her reference that she was ever serving as a custodian. There is also no evidence that San Diego complied with California's Uniform Transfers to Minors Act and San Diego has no evidence that there were any limitations on her control of the money she received from AFI, such as a trust agreement or other contract through which she was purportedly managing assets for the minor. Moreover, according to the California Probate Code, a custodian "shall . . . [t]ake control of custodial property" and may "in the custodian's discretion and without liability to the minor or the minor's estate, . . . retain any custodial property received from a transferor." Cal. Prob. Code §§ 3912(a)(1) & (b)(2). It therefore appears, as a matter of law, that San Diego had control of the funds transferred to her by AFI and that the Trustee could properly avoid those transfers.[8]

IV. Conclusion

For all of the foregoing reasons, the Court affirms in part, and reverses in part, the judgments entered in favor of the Trustee. Specifically, the Court, as affirmed by the Ninth Circuit in Mckenzie, reverses the Bankruptcy Court's conclusion that AFI did not receive "reasonably equivalent value" from the Investors up to the amount they invested but affirms

---

[8] The Court's conclusion is further supported by the fact that a contrary result would allow transferees the ability to defeat avoidance actions merely by stating that they were serving as custodians for others. Particularly where there is no evidence that the transferee complied with any of the formalities to create a custodial relationship, by for instance, filing taxes on behalf of the beneficiary or complying with the Uniform Transfers to Minors Act, application of the "dominion and control" test is not warranted. See In re Incomnet, Inc., 299 B.R. 574, 580 (B.A.P. 9th Cir. 2003) ("As this is not a 'conduit' case, this panel must fall back on the general rule that the party who receives a transfer of property directly or indirectly from the debtor is the initial transferee.").

1  the judgments for the amounts transferred to them by AFI in excess of whatever principal
2  they invested. Because these actions are being remanded, any discussion of the Bankruptcy
3  Court's discretion to award prejudgment interest is premature.[9] The Court rejects the
4  Investors' remaining arguments and declines to address the issues raised in the Trustee's
5  cross-appeals.[10] The Bankruptcy Court's rulings are affirmed in all other respects.
6       These matters are remanded to the Bankruptcy Court for further proceedings
7  consistent with this opinion and the Ninth Circuit's opinion in Mckenzie.
8       IT IS SO ORDERED.
9   DATED: September 4, 2008

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE

---

[9] The Court notes, however, that even according to the interpretation of Agretech and In re United Energy Corp. advanced by the Investors, they have never had a viable claim to amounts transferred to them in excess of the principal invested by each of them. It may therefore be appropriate, at a minimum, for the Trustee to be awarded prejudgment interest on the amounts the Investors received as "interest" on their investments in excess of the principal they invested.

[10] The Court expresses no opinion on the other theories of recovery advanced by the Trustee in his Complaints.

-9-